UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Fawzi Zaya,

                Petitioner,    Case No. 20-10921

v.    Judith E. Levy
    United States District Judge

Rebecca Adducci, *et al.*,

    Mag. Judge Anthony P. Patti

               Respondents.

_____/

# OPINION AND ORDER GRANTING IN PART PETITIONER'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER [2]

      This is a request for emergency injunctive relief in the form of Petitioner Fawzi Zaya's immediate release from immigration detention. Zaya claims that his continued civil detention violates his Fifth Amendment rights by exposing him to substantial risk of illness and death related to COVID-19. For the foregoing reasons, the Court GRANTS IN PART this emergency application for relief.

## BACKGROUND

Petitioner Fawzi Zaya is a forty-two-year-old citizen of Iraq. (ECF No. 7-1, PageID.509.) He has lived in the United States since March 1982. (ECF No. 1, PageID.21.) On December 19, 1997, Petitioner was convicted of Delivery over 50 Grams of Cocaine. (ECF No. 7-1, PageID.509.) On January 17 ,2008, Petitioner was convicted of Second-Degree Murder. (*Id.*) Upon Petitioner's parole from the Michigan Department of Corrections, ICE took him into custody pursuant to 8 U.S.C. § 1231(a)(2). (*Id.*) Petitioner has been detained at the Calhoun County Correctional Facility since March 24, 2020. (*Id.*)

Petitioner has a number of serious health conditions which place him at increased risk of serious complication or death from a COVID-19 infection. Zaya suffers from high blood pressure, diabetes, asthma, and neurological problems. (ECF No. 2-2, PageID.247.) He additionally suffers from neural foraminal stenosis, a kind of spinal stenosis requiring the use of a wheelchair and a TENS (transcutaneous electrical nerve stimulation) unit. (*Id.*) Petitioner also has gout. (*Id.*)

Petitioner names as Respondents: Rebecca Adducci, the Detroit District Director of ICE; Matthew Albence, Deputy Director; Kevin

McAleenan, Secretary of the United States Department of Homeland Security; and William Barr, Attorney General of the United States.

**PROCEDURAL HISTORY**

On April 13, 2020, Petitioner filed both a Petition for Writ of Habeas Corpus (ECF No. 1) and an Emergency Motion for Temporary Restraining Order (ECF No. 2.) The case was assigned to the Honorable Bernard A. Friedman. On April 13, 2020, the undersigned accepted reassignment of this case as a companion to Case No. 20-10829, *Malam v. Adducci*.[1] Both cases involve Petitioners with serious underlying health conditions challenging on Fifth Amendment grounds their continued confinement at the Calhoun County Correctional Facility in light of the risks posed by the COVID-19 pandemic. In *Malam*, the Court has twice granted emergency injunctive relief requiring the immediate

---

[1] In her response to Petitioner's motion, Respondent noted that the Honorable David E. Lawson was assigned an earlier-filed case, Case No. 20-10699, *Awshana v. Adducci*, also involving a noncitizen civil detainee at the Calhoun County Correctional Facility, though Judge Lawson's earlier case did not involve petitioners with underlying medical conditions that put them at a high risk of adverse health consequences or death if exposed to COVID-19. (ECF No. 7, PageID.491.) Eastern District of Michigan Local Rule 83.11(b)(7)(D) allows for reassignment of cases only "upon consent of the Judge having the earlier case number." After receiving Respondent's brief, the undersigned reached out to the Honorable David E. Lawson, inquiring as to whether he consented to reassignment of this case. He did not consent.

3

release of noncitizen ICE detainees in custody at the Calhoun County Correctional Facility because of health risks posed by the ongoing COVID-19 pandemic. *See Malam v. Adduci*, No. 20-10829, 2020 WL 1672662 (E.D. Mich. Apr. 6, 2020) (ordering immediate release of Petitioner Janet Malam); *Malam v. Adduci*, No. 20-10829, 2020 WL 1809675 (E.D. Mich. Apr. 9, 2020) (ordering immediate release of Plaintiff-Intervenor Amer Toma). On April 17, 2020, the Court converted the temporary restraining order with respect to Petitioner Malam into a preliminary injunction. *Malam v. Adduci*, No. 20-10829 (E.D. Mich. Apr. 17, 2020), ECF No. 33. Accordingly, the Court set an expedited briefing schedule and directed the parties to limit the scope of their briefing to whether the Court's reasoning in Case No. 20-10829, *Malam v. Adducci* applies to this case. (ECF No. 4.)

Respondent responded on April 15, 2020. (ECF No. 7.) Petitioner replied on April 16, 2020. (ECF No. 8.) For the reasons stated below, the Court GRANTS IN PART Toma's application for a temporary restraining order requiring his immediate release from detention for the duration of the COVID-19 State of Emergency in Michigan or until further Court order.

**LAW AND ANALYSIS**

    **I.    Jurisdiction**

In its April 6, 2020 Opinion and Order in *Malam v. Adducci*, the Court found that it had jurisdiction pursuant to 28 U.S.C. § 2441. *Malam v. Adducci*, Case No. 20-10829, 2020 WL 1672662, at *2 (E.D. Mich. Apr. 6, 2020). In the alternative, the Court found that it had jurisdiction pursuant to 28 U.S.C. § 1331. *Id.* at *4. The Court held that sovereign immunity did not apply, *id.* at *5, and that no other statute deprived the Court of jurisdiction. *Id.* Zaya's case presents the same jurisdictional questions. With respect to jurisdiction, the Court adopts its April 6, 2020 Opinion and Order in *Malam v. Adducci* in full.

    **II.    Proper Respondent**

As the Court explained in its April 6, 2020 Opinion and Order, only Rebecca Adducci is a proper Respondent for Petitioner's habeas petition. *Id.* at *6 (citing *Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003)).

    **III.    Legal Standard**

As set forth in the Court's April 6, 2020 Opinion and Order in *Malam v. Adducci*,

> In determining whether to grant such an order, courts evaluate four factors: 1) whether the movant has a strong

5

>   likelihood of success on the merits; 2) whether the movant would suffer irreparable injury absent an injunction; 3) whether granting the injunction would cause substantial harm to others; and 4) whether the public interest would be served by granting the injunction. *Northeast Ohio Coal. For Homeless and Serv. Emps. Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). These four factors "are not prerequisites that must be met, but are interrelated considerations that must be balanced together. For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay." Id. (internal quotations omitted). "[P]reliminary injunctions are extraordinary and drastic remedies [] never awarded as of right." *Am. Civil Liberties Union Fund of Michigan v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015).

*Malam v. Adducci*, Case No. 20-10829, 2020 WL 1672662, at *6 (E.D. Mich. Apr. 6, 2020).

### IV. Analysis

Each of the four factors weighs in favor of granting emergency injunctive relief in this case. The Court grants Zaya's motion in part for the reasons set forth below.

The Court in *Malam v. Adducci* found that emergency injunctive relief was warranted for Petitioner Malam because Malam had shown: a high likelihood of irreparable injury absent an injunction, both in the

6

form of substantial risk to her health and life from COVID-19 and due to her alleged constitutional violations, *id.* at *7; a strong likelihood of success on the merits with respect to both the objective and subjective components of a deliberate indifference claim, *id.* at *10; and that both the balance of equities and public interest favored her immediate release. *Id.* at 13. Malam's increased risk of severe illness and death from COVID-19, stemming from fifteen underlying health conditions, contributed to the Court's findings of irreparable injury—"Petitioner's severe health conditions render her substantially likely to suffer irreparable harm or death as a result [of continued detention," *id.* at *9—and likelihood of success on the merits—"even with [] precautionary measures, in light of Petitioner's underlying health conditions, she is not ensured anything close to 'reasonable safety.'" *Id.* at *12.

On April 9, 2020, the Court applied its analysis in its first order to grant emergency injunctive relief to Plaintiff-Intervener Amer Toma. *Malam v. Adduci*, No. 20-10829, 2020 WL 1809675 (E.D. Mich. Apr. 9, 2020). Although Toma had fewer and less serious underlying health conditions than Malam, the Court found that his age (fifty-five) and mobility limitations (Toma alleged that he relies on a wheelchair for

7

mobility) placed him at increased risk of severe complications or death from a COVID-19 infection, rendering necessary a temporary restraining order. *Id.* at *5.

Respondent argues that Petitioner Zaya is not entitled to the same emergency injunctive relief because: Petitioner has not shown that his risk of exposure to COVID-19 at Calhoun is sufficiently imminent to state a cognizable constitutional claim or show irreparable harm (ECF No. 7, PageID.494); Petitioner cannot show deliberate indifference because both ICE and the Calhoun County Correctional Facility have taken reasonable precautions to reduce the risk of COVID-19 infection (*Id.* at PageId.499), and the public interest does not favor Petitioner's release because of his criminal history. (*Id.* at 506.)

**A. Irreparable Injury**

In its April 17, 2020 opinion in *Malam v. Adducci*, the Court explained how Respondent's argument that the petitioner's risk of COVID-19 infection is insufficient to warrant relief contradicts public health evidence. Drawing on the extensive public health evidence in the record, the Court found that "in the face of a deadly pandemic with no vaccine, no cure, limited testing capacity, and the ability to spread

8

quickly through asymptomatic human vectors, a 'generalized risk' is a 'substantial risk' of catching the COVID-19 virus for any group of human beings in highly confined conditions, such as Petitioner within the CCCF facility." *Malam v. Adducci*, Case No. 20-10829 (E.D. Mich. Apr. 17, 2020), ECF No. 33, PageID.708 (citing *Malam*, 2020 WL 1672662, at *9). The Court concluded that, because of the petitioner's serious underlying health conditions, she would face irreparable harm were she to return to the Calhoun County Correctional Facility. *Id.*

The record in this case includes substantial public health evidence by which the Court can conclude the same.

Petitioner includes a letter to three United States House and Senate Committees from Scott Allen, Professor Emeritus of the University of California School of Medicine, and Josiah Rich, Professor of Medicine and Epidemiology at the Warren Alpert Medical School of Brown University. (ECF No. 1-5) Doctors Allen and Rich write that "[R]egarding the need to implement immediate social distancing to reduce the likelihood of exposure to detainees, facility personnel, and the general public, it is essential to consider releasing all detainees who do not pose an immediate risk to public safety." (ECF No. 1-5, PageID.86.)

9

They continue, "[W]ith reporting that immigrant detainees at ICE facilities are already being isolated for possible exposure to coronavirus, it is not enough to simply stop adding to the existing population of immigrant detainees. Social distancing through release is necessary to slow transmission of infection." (ECF No. 1-5, PageID.87.)

Petitioner cites to a letter from over 3000 physicians and other medical professionals to ICE Acting Director Matthew Albence. (ECF No. 1-7.) The letter concludes that "[i]ndividuals and families, particularly the most vulnerable—the elderly, pregnant women, people with serious mental illness, and those at higher risk of complications—should be released while their legal cases are being processed to avoid preventable deaths and mitigate the harm from a COVID-19 outbreak." (ECF No. 1-7, PageID.95.)

Petitioner also includes the declaration of Dr. Marc Stern, a physician, board-specialized in internal medicine and specializing in correctional health care. (ECF No. 1-13.) Dr. Stern declares that "for detainees who are at high risk of serious illness or death should they contract the COVID-19 virus, release from detention is a critically important way to meaningfully mitigate that risk. (*Id*. at PageID.205.)

10

The record also includes the Declaration of Dr. Jonathan Golob, (ECF No. 2-3, PageID.255,) to which the Court cites at length in its most recent opinion. *See Malam v. Adduci*, No. 20-10829 (E.D. Mich. Apr. 17, 2020), ECF No. 33.

Finally, Petitioner provides the Declaration of Dr. Robert Greifinger, a New York physician. (ECF No. 2-4, PageID.268.) Dr. Greifinger declares that:

> ICE must release all people with risk factors to prevent serious illness including death. ICE's response has made abundantly clear that they do not plan to establish special protections for high-risk patients, instead waiting for them to become symptomatic. This will lead to unnecessary illness and death for the people most vulnerable to this disease. ICE is walking willingly into a preventable disaster by keeping high-risk and vulnerable patients in detention facilities during the rapid spread of COVID-19.

(*Id.* at PageID.268.) He concludes,

> The only viable public health strategy available is risk mitigation. Even with the best-laid plans to address the spread of COVID-19 in detention facilities, the release of high-risk individuals is a key part of a risk mitigation strategy. In my opinion, the public health recommendation is to release high-risk people from detention, given the heightened risks to their health and safety, especially given the lack of a viable vaccine for prevention or effective treatment at this stage. Release of the most vulnerable people also reduces the burden

> on these facilities' limited health care infrastructure, as it lessens the likelihood that an overwhelming number of people will become seriously ill from COVID-19 at the same time. Release also reduces the burden on regional hospitals and health centers, which will otherwise bear the brunt of having to treat these individuals when infected, thus reducing the number of hospital beds and equipment available for the general population.

(*Id.* at 268–269.)

Respondent addresses only the declaration of Dr. Greifinger. She notes that "Dr. Greifinger's declaration was signed prior to ICE's newly issued guidance on April 10, 2020." (ECF No. 7, PageID.501.) She explains that "[m]uch of the concerns noted by Dr. Greifinger are addressed in the updated guidance." (*Id.*)

However, the public health evidence—including Dr. Greifinger's declaration—does not support Respondent's conclusion that the precautions taken by ICE sufficiently reduce the risk of COVID-19 infections to at-risk civil detainees. The evidence strongly suggests that release is the only justifiable option consistent with public health principles. Respondent may disagree with this conclusion, but to contest it here she must provide the Court with public health or other scientific

12

evidence regarding the level of risk to Petitioner given the precautions taken.

Like the petitioner in *Malam*, Petitioner Zaya suffers from a number of serious health conditions—most notably, high blood pressure, diabetes, and asthma—that place him at severe risk of complication or death from a COVID-19 infection. Accordingly, the Court's reasoning in *Malam* applies: Petitioner has shown a high likelihood of irreparable injury absent an injunction, both in the form of substantial risk to his health and life from COVID-19 and due to his alleged constitutional violations. *Malam*, 2020 WL 1672662 at *7.

### B. Likelihood of Success on the Merits

Like the petitioner in *Malam*, Petitioner here has shown a likelihood of success on the merits. Eighth Amendment claims require a showing of deliberate indifference, *see Farmer v. Brennan*, 511 U.S. 825, 835 (1994), which has both an objective and a subjective component. *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (citing *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). Respondent argues that Petitioner cannot satisfy the subjective component of his claim because ICE and the Calhoun County Correctional Facility have

13

taken reasonable precautions to protect detainees from COVID-19. Respondent concedes that not all of Dr. Greifinger's concerns have been met. (ECF No. 7, PageID.501.) However, Respondent argues that "while Dr. Greifinger may have concerns from a medical perspective about whether every possible precaution is being taken – that is not what the [C]onstitution requires." (*Id.* at PageID.501–502.) Respondent goes on to claim that:

> [t]he Court's reasoning in the Malam Order that the only reasonable response is release, and that 'any other response demonstrates a disregard of the specific, severe, and life-threatening risk to Petitioner from COVID-19,' ignores the facts. Calhoun has not disregarded the risk to Petitioner, or any other detainee, because it has implemented precautions based on CDC and ICE guidance to reduce the introduction of COVID-19 to the facility, and to contain the virus if it is introduced.

(ECF No. 7, PageID.504.)

But to the extent that Respondent's precautions do not ensure Petitioner's "reasonable safety," *see Helling v. McKinney*, 509 U.S. 25, 33 (1993), they cannot be said to be reasonable. The Court explains in its most recent opinion in *Malam* why precedent regarding reasonable precautions for other outbreaks—*see Wooler v. Hickman County*, 377 F.

14

App'x 502 (6th Cir. 2010); *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)—do not apply:

> COVID-19 is neither MRSA nor tuberculosis. *Wooler* and *Butler* suggest precautions can reasonably mitigate the risk of tuberculosis or MRSA in conditions of communal confinement. COVID19 is a global pandemic of unparalleled scope, and the public health evidence available to the Court suggests that communal confinement cannot ensure detainees reasonable safety from infection. Accordingly, any response short of authorizing release from the Calhoun County Correctional Facility for this Petitioner, whose underlying health conditions expose [him] to a high risk of an adverse outcome if infected by COVID-19, demonstrates deliberate indifference to a substantial risk.

*Malam v. Adduci*, No. 20-10829 (E.D. Mich. Apr. 17, 2020), ECF No. 33, PageID.772.

Respondent does not address any of the other public health evidence in the record. No conditions of confinement at the Calhoun County Correctional Facility will be sufficient to protect this Petitioner's health, life, and constitutional rights, short of release. A lack of confirmed COVID-19 outbreak at the Calhoun County Correctional Facility does not justify a different conclusion. Indeed, the Court noted in its most recent opinion that despite precautionary measures, outbreaks have occurred across the country in state jails, federal prisons, and ICE

15

detention centers alike. *Id.* at PageID.716. Petitioner has shown a likelihood of success on the merits.

### C. Balance of Equities and Public Interest

When the government opposes the issuance of a temporary restraining order, as Respondent does here, the final two factors—the balance of equities and the public interest—merge, because "the government's interest is the public interest." *Pursuing America's Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 512 (D.C. Cir. 2016) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

In *Malam*, the Court found that the public interest favored granting injunctive relief because release would protect both Malam's constitutional rights and public health. *See Malam*, 2020 WL 1672662, at *13 (citing *G & V Lounge Inc. v. Mich. Liquor Control Comm.*, 23 F.3d 1071, 1079 (6th Cir.1994) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."); *Neinast v. Bd. Of Trustees*, 346 F.3d 585, 592 (6th Cir. 2003) (recognizing public health and safety as legitimate government interests).

Respondent argues that public interest favors Petitioner's continued detention because "the public interest in enforcement of the

16

United States' immigration laws is significant." (ECF No. 7, PageID.505 (citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556–58 (1976); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) ("The Supreme Court has recognized that the public interest in enforcement of the immigration laws is significant.").)

The Court addressed this argument in *Malam*; its analysis applies here:

> Respondent[] point[s] to only one immigration law that will see continued enforcement by denying relief to Petitioner. That law is [8 U.S.C. § 1231(a)(2)], and it authorizes Petitioner's continued detention. But as set forth above, Petitioner's continued detention is in violation of the United States Constitution, to which [8 U.S.C. § 1231(a)(2)] must give way.

*Malam*, 2020 WL 1672662, at *13

Respondent attempts to distinguish this case from the Court's earlier opinions by noting Petitioner's serious criminal history. (ECF No. 7, PageID.506.) Petitioner has several drug-related convictions, as well as convictions for murder and domestic violence. (*Id.*) The Court acknowledges the seriousness of Petitioner's crimes. But critically for this case, Petitioner has completed his sentences for each of those convictions. In October 2019, a parole officer with the Michigan Department of

Corrections (MDOC) found Petitioner eligible for parole. (ECF No. 1, PageID.27.) On March 24, 2020, Petitioner was released from MDOC custody. (ECF No. 7-1, PageID.509.) Petitioner is currently a civil detainee facing removal proceedings. Moreover, Respondent does not argue that Petitioner would either be a danger to his community or a flight risk. Nor could she credibly do so—Petitioner uses a wheelchair for mobility, has several serious underlying health conditions, and will be subject to reasonable supervisory conditions upon release. Accordingly, Petitioner's prior criminal convictions do not necessitate a finding that the public interest favors his continued detention.

The Court finds that the balance of equities and public interest support issuing a temporary restraining order.

Because all four factors weigh in favor of issuing emergency injunctive relief, Petitioner's motion for a temporary restraining order is granted. The Court emphasizes that this result is motivated by Petitioner's specific and serious health conditions.

## CONCLUSION

For the reasons stated above, Petitioner's Application for a Temporary Restraining Order is **GRANTED IN PART**. Respondent

Adducci is **ORDERED** to release Petitioner on April 18, 2020. Petitioner will be subject to the following restrictions: Petitioner is subject to fourteen days of home quarantine; Petitioner must comply with all Michigan Executive Orders; and Petitioner must appear at all hearings pertaining to his removal proceedings. Respondent may impose other reasonable nonconfinement terms of supervision.

Respondent is further **RESTRAINED** from arresting Petitioner for civil immigration detention purposes until the State of Emergency in Michigan (related to COVID-19) is lifted or until further Court Order stating otherwise.

The Temporary Restraining Order will expire on April 30, 2020, at 6:30 p.m. No later than April 23, 2020, at 12:00 p.m., Respondent must show cause why this Order should not be converted to a preliminary injunction. Petitioner may file a response no later than April 29, 2020, at 12:00 p.m.

IT IS SO ORDERED.

Dated: April 18, 2020  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
 United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 18, 2020.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager
