## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Fawzi Zaya,

Petitioner,

Case No. 20-10921

v.

Judith E. Levy
Rebecca Adducci, *et al.*,                    United States District Judge

Mag. Judge Anthony P. Patti

Respondents.

_____/

## OPINION AND ORDER CONVERTING TEMPORARY RESTRAINING ORDER INTO PRELIMINARY INJUNCTION [9]

On April 18, 2020, the Court issued an order granting a temporary restraining order and requiring Petitioner Fawzi Zaya's immediate release from Immigration and Customs Enforcement (ICE) Custody. (ECF No. 9.) On April 30, 2020, the Court, finding good cause, extended the TRO until May 14, 2020 and requested additional supplemental briefing. (ECF No. 12, PageID.768.) The Court now grants a preliminary injunction requiring Petitioner's continued release.

### I.     Background

Petitioner Fawzi Zaya is a forty-two-year-old citizen of Iraq. (ECF No. 7-1, PageID.509.) He has lived in the United States since March 1982. (ECF No. 1, PageID.21.) On December 19, 1997, Petitioner was convicted of Delivery over 50 Grams of Cocaine. (ECF No. 7-1, PageID.509.) Petitioner has also been convicted of domestic violence. (ECF No. 10, PageID.684.) On January 17, 2008, Petitioner was convicted of Second-Degree Murder. (ECF No. 7-1, PageID.509.) Upon Petitioner's parole from the Michigan Department of Corrections, ICE took him into custody pursuant to 8 U.S.C. § 1231(a)(2). (*Id.*) Petitioner has been detained at the Calhoun County Correctional Facility (CCCF) since March 24, 2020. (*Id.*)

Petitioner has several serious health conditions. He is obese (ECF No. 10, PageID.685) and suffers from high blood pressure, diabetes, and asthma. (ECF No. 2-2, PageID.247.) He also suffers from neural foraminal stenosis, a kind of spinal stenosis requiring the use of a wheelchair and a TENS (transcutaneous electrical nerve stimulation) unit. (*Id.*) Petitioner also has gout. (*Id.*) Respondent alleges that Petitioner has exaggerated his health conditions, but Respondent does

not contest that Petitioner is obese and suffers from high blood pressure, diabetes, and asthma. (*Id.*)

On April 13, 2020, Petitioner filed both a Petition for Writ of Habeas Corpus (ECF No. 1) and an Emergency Motion for Temporary Restraining Order. (ECF No. 2.) The case was assigned to the Honorable Bernard A. Friedman. On April 13, 2020, the undersigned accepted reassignment of this case as a companion to Case No. 20-10829, *Malam v. Adducci.* Both cases involve Petitioners with serious underlying health conditions challenging on Fifth Amendment grounds their continued confinement at the Calhoun County Correctional Facility in light of the risks posed by the COVID-19 pandemic. The Court granted Petitioner's motion on April 18, 2020. (ECF No. 9.) After receiving supplemental briefing, the Court found good cause to extend the TRO until May 14, 2020 and ordered an additional round of supplemental briefing on whether additional precautions could be and were being implemented at the Calhoun County Correctional Facility. (ECF No. 12.) Respondent

filed a supplemental brief on May 7, 2020. (ECF No. 13.) Petitioner filed a supplemental brief on May 11, 2020.[1] (ECF No. 14.)

Because the Court finds that balancing the irreparable injury faced by Petitioner, his likelihood of success on the merits, and the public interest favors continued injunctive relief, the Court converts the TRO into a preliminary injunction.

## II. Legal Standard

"[P]reliminary injunctions are extraordinary and drastic remedies [] never awarded as of right." *Am. Civil Liberties Union Fund of Michigan v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015). In determining whether to grant a preliminary injunction, courts evaluate four factors: 1) whether the movant has a strong likelihood of success on the merits; 2) whether the movant would suffer irreparable injury absent an injunction; 3) whether granting the injunction would cause substantial harm to others; and 4) whether the public interest would be served by

---

[1] In its April 30, 2020 opinion, the Court noted that "[g]iven the significance of the issues presented by this case and the seriousness of Petitioner's constitutional claims, particularly as they relate to the high risk to Petitioner's health and life, the Court did not find [Petitioner's April 29, 2020 brief] helpful to its consideration of his claims." (ECF No. 12, PageID.747.) Petitioner's most recent supplemental brief is no more useful. Again, Petitioner failed to address the majority of Respondent's arguments or to provide a single legal citation in support of his own.

granting the injunction. *Northeast Ohio Coal. For Homeless and Serv. Emps. Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). These four factors "are not prerequisites that must be met but are interrelated considerations that must be balanced together. For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay." *Id.* (internal quotations omitted).

### III. Analysis

In granting Petitioner a temporary restraining order, the Court found that his high risk of COVID-19 infection in communal confinement and serious underlying health conditions supported a finding of irreparable injury absent an injunction (ECF No. 9, PageID.668–673); Petitioner had demonstrated a likelihood of success on the merits because Respondent's precautions could not guarantee Petitioner reasonable safety (*id.* at PageID.673–676); and the public interest in public health and safety outweighed its interest in Petitioner's continued detention. (*Id.* at PageID.676–678.)

The Court was unable to fully determine by the initial date for the expiration of the Temporary Restraining Order whether a preliminary

injunction was warranted. Given Respondent's uncontested argument regarding Petitioner's danger to the community and risk of flight (ECF No. 10, PageID.704–706), the Court ordered supplemental briefing to better inform its adjudication. In particular, the Court sought additional information regarding the feasibility and implementation of additional precautionary measures at the Calhoun County Correctional facility, including testing for staff and detainees, mandatory personal protective equipment in the form of masks for staff and detainees, and guaranteed single-cell housing for Petitioner. (ECF No. 12, PageID.768.) Respondent informed the Court that

> Respondents are able to guarantee individual housing for Petitioner. Calhoun has already begun providing surgical grade masks to all detainees and inmates. They are required to wear them outside the housing unit, but are permitted to wear them inside the housing unit. Detainees are issued a new mask upon request free of charge. Staff are required to wear masks while performing booking and intake, but are encouraged to wear masks at all times. At this time, Calhoun does not have plans to implement mandatory COVID-19 testing for all staff and detainees.

(ECF No. 13, PageID.770–771 (internal citations omitted).)

The Court finds that Petitioner continues to demonstrate a high risk of irreparable injury absent an injunction. Although Petitioner's

6

likelihood of success on the merits is mixed, the public interest favors his continued release. On balance, the factors support granting a preliminary injunction.

### A.   Irreparable Injury

In its April 30, 2020 Order, the Court found that "[i]n order for Respondent to sufficiently reduce the risk of irreparable injury to Petitioner—because of Petitioner's heightened risk of severe illness and death—Respondent, ICE, and the Calhoun County Correctional Facility would need to provide COVID-19 testing to all staff and detainees." (ECF No. 12, PageID.761.) On May 7, 2020, Respondent explained that "Calhoun does not have plans to implement mandatory COVID-19 testing for all staff and detainees." (ECF No. 13, PageID.770–771.)

Moreover, on May 11, 2020, counsel for Respondent informed the Court by email that one detainee at the Calhoun County Correctional Facility has tested positive for COVID-19. According to counsel, the detainee was quarantined at intake and was isolated when he became symptomatic. On May 14, 2020, counsel for Respondent sent this supplemental email: "In an update to the below, four detainees had contact with the positive detainee and were also isolated and tested, none

had been in general population. Three tested negative and one tested positive."

As the Court recently held in a companion case, "emergence of COVID-19 at the Calhoun County Correctional Facility transforms a generalized yet substantial risk into a specific and immediate risk." *Malam v. Adducci*, Case No. 20-10829 (E.D. Mich. May 12, 2020), ECF No. 68 at PageID.1914–15 (hereinafter *Malam* Order). Accordingly, the Court adopts, with one exception, the reasoning from its April 18, 2020 and April 30, 2020 Orders in this case with respect to irreparable injury.

The Court no longer finds that Petitioner's high blood pressure or asthma increase his risk of an adverse outcome from COVID-19. In its April 30, 2020 Order, the Court found that "Respondent does not contest that Petitioner is obese and suffers from high blood pressure, diabetes, and asthma, each of which places him at heightened risk of severe illness and/or death from COVID-19. (ECF No. 12, PageID.748.) In *Malam*, the Court recently found that the public health evidence is uncertain regarding whether high blood pressure constituted an independent risk factor for a severe negative outcome from COVID-19, *see Malam* Order at PageID.1924, and that asthma constituted a risk factor if it is

8

"moderate to severe." *See id*. at PageID.1926. Petitioner does not directly address whether his high blood pressure increases his risk of a negative outcome from a COVID-19 infection. With regards to his asthma, Petitioner alleges that "he has asthma, for which he uses an inhaler. He is not allowed to keep his inhaler on him at Calhoun so if he needs it he has to find a guard and wait for someone to bring it to him" (ECF No. 2, PageID.225); additionally, he alleges that he "was denied treatment during asthma attacks." (ECF No. 14, PageID.788.) Petitioner neither provides the Court with a definition of moderate to severe asthma nor describes the severity of his own. Accordingly, the Court no longer finds that Petitioner's high blood pressure and asthma increase his risk of serious illness and/or death from COVID-19.

Nonetheless, Petitioner's obesity and diabetes place him at a high risk of serious illness and/or death from COVID-19. Given the confirmed cases of COVID-19 at CCCF, and absent widespread testing to determine the scope of the outbreak and to prevent asymptomatic transmission, Petitioner has shown a high risk of irreparable injury in the form of loss of health or life from COVID-19 absent an injunction.

## B.   Likelihood of Success on the Merits

Civil detainees' Fifth Amendment claims are analyzed "under the same rubric as Eighth Amendment claims brought by prisoners." *Villegas v. Metropolitan Gov't*, 709 F.3d 563, 568 (6th Cir. 2013). Eighth Amendment claims require a showing of deliberate indifference, *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), which includes showing an objective substantial risk of serious harm and a subjective culpable mental state. *Villegas v. Metro. Gov't*, 709 F.3d 563, 568 (6th Cir. 2013) (citing *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).

### 1. Objective Component of Deliberate Indifference

In its April 30, 2020 Order, the Court held that "[a]lthough the . . . precautions taken at the Calhoun County Correctional Facility are important, they do not yet go far enough to be a reasonable response to a global pandemic with respect to detainees at heightened risk of severe illness and death from COVID-19." (ECF No. 12, PageID.762.) And as the Court explained in *Malam*, "[t]he Court need not dwell on the distinctions between a high likelihood of irreparable harm and a substantial risk of serious harm—to the extent the former comes in the form of a risk to health or life, it satisfies the latter." *Malam* Order at PageID.1934.

10

Nonetheless, Respondent argued in her May 7, 2020 brief that "Petitioner does not establish that his exposure to COVID-19 is imminent, where reasonable precautions are in place, he already has a single cell, and there are no confirmed cases of COVID-19 at Calhoun." (ECF No. 13, PageID.771.)

There are now two confirmed cases of COVID-19 at the Calhoun County Correctional Facility, and no widespread testing to determine the scope of the outbreak and whether Petitioner would be exposed to the virus upon return to the facility. Moreover, given the percentage of asymptomatic COVID-19 cases and the virus' incubation period of up to fourteen days, Respondent cannot reasonably assert that the outbreak is—or will continue to be—limited to these two cases.

Additionally, the Court explained in detail in its April 30, 2020 Order why, "with respect to Petitioner, [Respondent's] precautions do not go far enough to constitute a reasonable response to COVID-19." (ECF No. 12, PageID.764.) The Court concluded that

> in light of Petitioner's underlying health conditions, the public health evidence available, and the exponential growth of COVID-19 infections within ICE detention centers, a reasonable response would include, at minimum, the following additional precautions: [m]andatory face masks for

11

all detainees and staff[; and g]uaranteed individual housing
for Petitioner should he return to CCCF.

(*Id.* at PageID.765.)

The Court commends Respondent for her guarantee that Petitioner
would have individual housing upon his return. However, as Petitioner
argues,

> Petitioner is wheelchair-bound and must wear adult diapers.
> Individual housing would not protect him from exposure to
> COVID-19. He is dependent on others to change his diapers
> and to bathe him, and therefore he cannot practice social
> distancing from Calhoun staff who will need to make
> extensive physical contact with him to care for him.
> Furthermore, Calhoun's common areas do not allow for social
> distancing: [As Zaya declares,] "No one I encountered, guards
> or inmates, were practicing social distancing. It was
> impossible for inmates to stay at a safe distance from one
> another in the pod. We ate together in a collective room that
> could not accommodate social distancing."

(ECF No. 14, PageID.789.)

The Court finds that guaranteed individual housing in combination
with Respondent's other existing precautions would still be insufficient
to guarantee Petitioner's reasonable safety. The Court adopts the
reasoning in its April 18 and 30, 2020 Orders with respect to the
reasonability of Respondent's precautions and holds that the risk of

12

COVID-19 infection to Petitioner, were he to return to the Calhoun County Correctional Facility, would be both imminent and substantial, satisfying the objective component of Petitioner's claim.

### 2. Substantial Component of Deliberate Indifference

Respondent argues that Petitioner cannot show the subjective component of his deliberate indifference claim. Respondent cites to two recent Circuit Court opinions, both of which held that without specific evidence of mental state, prisoners could not show deliberate indifference on the part of the Texas or Florida correctional systems where the jails alleged substantial compliance with CDC guidance for detention and correctional facilities. (ECF No. 13, PageID.775–778 (citing *Valentine v. Collin*, No. 20-20207, 2020 WL 1934431 (5th Cir. Apr. 22, 2020) and *Swain v. Junior* No. 20-11622, 2020 WL 2161317 (11th Cir. May 5, 2020)).)

In *Valentine*, the Fifth Circuit held,

Though the district court cited the Defendants' general awareness of the dangers posed by COVID-19, it cited no evidence that they subjectively believe the measures they are taking are inadequate. To the contrary, the evidence shows that TDCJ has taken and continues to take measures— informed by guidance from the CDC and medical professionals—to abate and control the spread of the virus. . .

13

. Although the district court might do things differently, mere "disagreement" with TDCJ's medical decisions does not establish deliberate indifference.

2020 WL 1934431 at *4 (citations omitted). The court concluded that in finding objectively "inadequate measures as dispositive of the Defendants' mental state," "the district court . . . collapsed the objective and subjective components of the Eighth Amendment inquiry." *Id.*

In *Swain*, the Eleventh Circuit cited to *Valentine* and stayed a similar injunction on the grounds that "the district court cited no evidence to establish that the defendants subjectively believed the measures they were taking were inadequate." 2020 WL 2161317, at *4.

Petitioner did not address this caselaw in his May 14, 2020 supplemental brief. (ECF No. 14.) Nor did Petitioner address the subjective component of his deliberate indifference claim in his initial motion (ECF No. 2), reply brief (ECF No. 8), or response to the Court's April 18, 2020 Order.[2] (ECF No. 29.) However, Respondent raised a

---

[2] Petitioner's only argument on this issue is that the Court "can simply apply the *Bell* test, [rather than the *Farmer* test], as recently reaffirmed by the Sixth Circuit in *Williamson Cty*." (ECF No. 2, PageID.234.) Petitioner misreads Sixth Circuit precedent. Although the court in *J.H. v. Williamson Cty.* applied the *Bell* freedom from punishment standard to a pretrial detainee's solitary confinement claim, it applied the dual-prong deliberate indifference standard to the detainee's claim alleging inadequate medical and mental health care. 951 F.3d 709, 717, 722 (6th Cir.

similar argument in *Malam*. There the Court found that "[c]ontrary to Defendants' suggestion and distinct from *Valentine* and *Swain*, the record before the Court demonstrates that Defendants are aware that medically vulnerable detainees require additional protection, but nonetheless have declined to act." *Malam* Order at PageID.1947–48. The Court relied on the Sixth Circuit in *Richko v. Wayne Cty.*, which held that "[b]ecause government officials do not readily admit the subjective component of this test, it may be demonstrated in the usual ways, including inference from circumstantial evidence." *Id.* at PageID.1948 (citing 819 F.3d at 916 (6th Cir. 2016)).

The Court explained,

> At the Court's May 7, 2020 videoconference hearing, Defendants conceded that they have not implemented any policies specific to the protection of medically vulnerable detainees, arguing instead that general precautionary measures serve to protect the higher risk population. CDC guidance for correctional and detention facilities does not address the specific needs of medically vulnerable detainees; it only notes that "[i]f the number of confirmed cases exceeds the number of individual medical isolation spaces available in the facility, be especially mindful of cases who are at higher

---

2020.) As the Court held in *Malam*, "Absent more guidance from the Sixth Circuit, the Court will require [Petitioner] to show both the objective and subjective components of a deliberate indifference claim." *Malam* Order at PageID.1934.

risk of severe illness from COVID-19." Interim Guidance on Management of Coronavirus Disease 2019 (COVID19) in Correctional and Detention Facilities, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last reviewed May 7, 2020). Nor does ICE guidance fill the gap; to the extent that ICE Guidance addresses medically vulnerable detainees, it contemplates considering release as an option: "Upon being informed of a detainee who may potentially be at higher risk for serious illness from exposure to COVID-19, ERO will review the case to determine whether continued detention is appropriate. ICE will make such custody determinations on a case-by-case basis, pursuant to the applicable legal standards, with due consideration of the public health considerations implicated." (ECF No. 52-7, PageID.1591.) Indeed, as of April 16, 2020, ICE had released almost 700 noncitizen civil detainees nationwide. Matt Katz, ICE Releases Hundreds of Immigrants as Coronavirus Spreads in Detention Centers, NPR (Apr. 16, 2020) https://www.npr.org/sections/coronavirus-liveupdates/2020/04/16/835886346/ice-releases-hundreds-as-coronavirusspreads-in-detention-centers.

On the one hand, Defendants are aware of the heightened risk posed by COVID-19 to medically vulnerable detainees, and as such ICE has already released hundreds of people from ICE custody. On the other, Defendants have not—and seemingly will not—adopt precautions specific to this vulnerable population that public health evidence shows to be necessary. And despite five opportunities to do so in this case alone, Defendants have not provided the Court with the declarations

16

of any medical professional or public health expert who can reconcile these two conflicting positions. As Defendants explained in another case challenging the constitutionality of civil detention at the Calhoun County Correctional Facility, "In issuing guidance, ICE relied on epidemiologists and also convened a working group between medical professionals, disease control specialists, detention experts, and field operators to identify additional enhanced steps to minimize the spread of the virus." *Zaya v. Adducci*, Case No. 20-10921 (E.D. Mich. Apr. 23, 2020), ECF No. 10 at PageID.700 (internal citation omitted). Defendants fail to acknowledge or address the evidence submitted by Plaintiffs and the weight of public health evidence recognizing that absent specific precautions, Plaintiffs' release constitutes the only reasonable response to an extraordinary and deadly pandemic. Plaintiffs Alhalmi and Cardona Ramirez have shown the subjective component of their deliberate indifference claim.

*Id.* at PageID.1950.

Unlike in *Malam*, Respondent has taken at least one precaution specific to Petitioner: guaranteed individual housing. Although this additional precaution is insufficient to obviate the substantial risk of serious harm Petitioner would face at the Calhoun County Correctional Facility in light of his mobility impairment and other personal care needs, it demonstrates Respondent's willingness to provide Petitioner additional protection and makes Petitioner's success on the merits less likely with respect to the subjective component of his claim.

17

The Sixth Circuit in *Six Clinics Holding Corp., II. v. Cafcomp Sys.* recognized that "in order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success." 119 F.3d 393, 402 (6th Cir. 1997) (citing *Mason Cty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 n. 4 (6th Cir.1977)). Given Petitioner's failure to address the subjective component of his claim, and the fact that Respondent has promised to take an additional precaution specific to Petitioner, the Court finds Petitioner's likelihood of success on the merits with respect to the subjective component of his deliberate indifference claim is not strong.

But as the court in *Six Clinics Holding Corp., II.* further explained, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.* (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1989)). Petitioner has met this standard, though barely. The Court has found Respondent's precautionary measures to be an unreasonable response to the COVID-19 pandemic considering Petitioner's very serious underlying health conditions. Respondent has refused to implement additional

18

precautions identified by public health experts as necessary to protect the health and lives of medically vulnerable detainees, even as ICE has issued guidance calling for the consideration of medically vulnerable detainees' release. Petitioner's likelihood of success on the merits may be uncertain, but circumstantial evidence raises substantial and difficult questions about Respondent's mental state regarding Petitioner's continued detention.

Accordingly, the Court finds the second factor to favor granting a preliminary injunction at this time.

## C.    Public Interest

In her April 23, 2020 response, Respondent provided the Court with evidence pertaining to Petitioner's serious criminal history and history of fleeing law enforcement. (ECF No. 10, PageID.705.) Petitioner failed to address Respondent's argument in his response. (ECF No. 11.) Accordingly, in its April 30, 2020 Order, the Court found that Petitioner "is a danger to the community and a flight risk." (ECF No. 12, PageID.752.) Petitioner again failed to address this evidence or the Court's conclusion in his May 11, 2020 response. (ECF No. 14.) That said, Petitioner has now been released for twenty-five days; the Court has not

received any reports that Petitioner has violated the terms of his release. His current age and medical condition would certainly limit his ability to flee or commit further crimes. The Court understands Repondent's argument that Petitioner solicited, rather than directly participated in, the events leading to his conviction for Second-Degree Murder. (ECF No. 10, PageID.684.)

Nonetheless, the Court finds that the changes in Petitioner's circumstances since that time significantly decrease Petitioner's danger and risk of flight. In October 2019, a parole officer with the Michigan Department of Corrections (MDOC) found Petitioner eligible for parole. (ECF No. 1, PageID.27.) Petitioner was released from MDOC custody on parole on March 24, 2020. (ECF No. 7-1, PageID.509.) But for an ICE detainer, he would have been living in the community as of that date. With the help of a parole officer, Petitioner had even secured potential employment. (ECF No. 2-2, PageID.250.) During his incarceration, Petitioner took thirty classes relating to job skills, anger management, and religion. (ECF No. 2-2, PageID.250.) Petitioner received his GED and more than twenty certificates structured around cognitive reframing. (ECF No. 14-1, PageID.293.) Additionally, Petitioner has had two

strokes, suffers from high blood pressure, asthma, diabetes, neural foraminal stenosis, and incontinence, and relies on a wheelchair for mobility. (ECF No. 14-1, PageID.792.) The Court concludes that Petitioner's current condition, educational achievements, and completion of his criminal sentences mitigate his danger and risk of flight.

Moreover, the Court found in its April 30, 2020 order that "public health provides a countervailing interest against which the Court must balance Petitioner's danger and risk of flight. Protecting public health and safety is in the public interest." (ECF No. 12, PageID.767 (citing *Neinast v. Bd. Of Trustees*, 346 F.3d 585, 592 (6th Cir. 2003) (recognizing public health and safety as legitimate government interests)).) The Court held that "absent testing, mandatory personal protective equipment, and individual housing for Petitioner, the public's interest in public health in the midst of a global pandemic takes precedence over the public's interest in Petitioner's continued detention." (*Id.* at PageID.768.) Respondent has shown a willingness to provide only one of those three additional precautions.

The Court recognizes the serious nature of Petitioner's criminal history. However, given the severity of the public health crisis created by

COVID-19 and the change in Petitioner's personal circumstances, the Court finds that the public interest favors his continued release.

## D.   Balancing

Petitioner has shown a high risk of irreparable injury in the form of loss of health or life from COVID-19 absent an injunction, a high likelihood of success on the merits of the objective component of his deliberate indifference claim, and a possibility of success on the merits of its subjective component. The public interest favors Petitioner's continued release.

As the Sixth Circuit held in *Blackwell*, these factors "are not prerequisites that must be met but are interrelated considerations that must be balanced together. For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay." 467 F.3d at 1009. (internal quotations omitted). Petitioner has a high risk of serious irreparable injury absent an injunction. *See Thakkur v. Doll*, No. 1:20-cv-480, 2020 WL 1671563, at *8 (M.D. Pa. Mar. 31, 2020)) ("There can be no injury more irreparable than lasting illness or death."). Although Petitioner's likelihood of success on the merits is not assured, the Court

finds Petitioner to nonetheless have a possibility of success. Under *Blackwell*, that is enough. Indeed, as the Supreme Court has stated,

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary injunction hearing.

*University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Furthermore, because the merits will most likely turn on Respondent's state of mind, Petitioner need not continue to be exposed to conditions of confinement which present a substantial risk of serious harm while the Court further adjudicates that issue.

The public interest further warrants continued injunctive relief. The Court recognizes the public interest in Petitioner's continued detention given his criminal history and history of fleeing law enforcement. But when considering Petitioner's serious underlying health conditions, the two confirmed cases of COVID-19 at the Calhoun County Correctional Facility, and Respondent's refusal to implement

23

mandatory personal protective equipment or widespread testing, the public's interest in safety and public health wins out.

On balance, the factors favor granting an injunction for the limited duration of the State of Emergency in Michigan (related to COVID-19). The Court will convert Petitioner's temporary restraining order into a preliminary injunction.

### E.    Scope of Injunctive Relief

Respondent argues that "[t]o the extent the Court elects to impose the conditions identified in this case, they are beyond what is required to defeat a deliberate indifference claim and would intrude on the purview of the Executive Branch." (ECF No. 13, PageID.774.) Petitioner does not, at this time, seek sweeping injunctive relief that would insert the Court into the day-to-day management of either U.S. Immigration and Customs Enforcement (ICE) or the Michigan Department of Corrections (MDOC); instead, Petitioner requests only his continued release. The Court's preliminary injunction is limited to that narrow relief. It does not require affirmative action from Respondent, nor does the Court make a finding regarding whether implementing the identified precautions would

constitute a reasonable response to COVID-19. The Court will adjudicate those issues if and when they are before it.

## IV. Conclusion

For the reasons stated above, the Court **GRANTS** a preliminary injunction mandating Petitioner Zaya's continued release. Petitioner remains subject to the following restrictions: he must comply with all Michigan Executive Orders; and he must appear at all hearings pertaining to his immigration proceedings. Respondent may impose other reasonable nonconfinement terms of supervision. Respondent is further RESTRAINED from arresting Petitioner for civil immigration detention purposes until the State of Emergency in Michigan (related to COVID-19) is lifted or until further Court Order stating otherwise.

IT IS SO ORDERED.

Dated: May 14, 2020              s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge

## <u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 14, 2020.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager

26